OPINION
Troy Jackson appeals from his conviction for attempted murder, felonious assault and having a weapon while under disability. He assigns two errors for our consideration:
Assignment of Error One
 THE TRIAL COURT ERRED IN PERMITTING THE STATE TO ADDUCE EVIDENCE OF OTHER WRONGS OF THE DEFENDANT WHEN THE DEFENDANT WAS NOT CHARGED WITH OTHER WRONGS AND THEY WERE NOT RELEVANT TO THE CASE BEING TRIED.
Assignment of Error Two
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
On July 15, 2000, William Denton was shot in the neck and paralyzed. The issue at trial was whether Mr. Jackson was the person who did the shooting.
On the July 15 date, William Denton went over to a friend's apartment to retrieve some clothes and personal belongings. Mr. Denton's friend Jerome Smith drove him over to pick the items up.
While he was at the apartment, Mr. Denton encountered Mr. Jackson. Mr. Jackson left the apartment. Later, when Mr. Denton left the apartment, he heard someone say something to him. Mr. Denton turned toward the sound and saw Mr. Jackson.
Mr. Denton started to walk toward Mr. Jackson and then a gun was shot. Mr. Denton saw the muzzle flash, but did not actually hear the gun discharge. Mr. Denton recalled looking up and falling to the ground. He then lost consciousness and next regained consciousness two weeks later in a hospital. He learned he had been shot in the front of the throat and paralyzed.
Tica M. Williams was the person who rented the apartment where William Denton left some of his personal belongings. She was inside the apartment when the gun discharged and did not see who fired the shot.
Jerome Smith was in the area when the gun discharged, but claimed in court at first that he did not see which of two men shot it. Mr. Jackson was one of the men and a "light skinned dude" was the other.
After his initial testimony at trial was completed, Mr. Smith was recalled to the witness stand and required to testify as the court's own witness. This procedure allowed Mr. Smith to be questioned about his earlier statements to police in which he identified Mr. Jackson as the shooter. On this second occasion, Mr. Smith testified that Mr. Jackson had shot Mr. Denton and that he (Jerome Smith) had lied in his earlier testimony because of fear for his own welfare.
Later in the trial, Mr. Jackson testified on his own behalf and stated that after he left the apartment he never looked back but fled the neighborhood. He expressly denied shooting Mr. Denton.
Preliminarily, we set forth the similar, yet distinct, standards by which we are bound in reviewing the first assignments of error, which challenges both the sufficiency of the evidence, and the manifest weight of the evidence.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, '"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.').
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of the offenses charged, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
The evidence before the trial court was sufficient to support a finding that Mr. Jackson shot Mr. Denton, based upon the testimony of Mr. Smith. The jury was free to believe or disbelieve Mr. Smith's testimony, just as it was free to believe or disbelieve Mr. Jackson's testimony. The jury chose to believe Mr. Smith's testimony about the only contested issue at trial. This choice was within their reasonable authority as jurors.
The jury verdict also was not against the manifest weight of the evidence. Mr. Smith's testimony was not inherently unbelievable. The jury had the ability to weigh his testimony against the testimony of Mr. Jackson and be convinced beyond a reasonable doubt.
The second assignment of error is overruled.
During the trial testimony, a police detective indicated that Mr. Jackson had driven a stolen vehicle earlier in the evening. Although this testimony was irrelevant, the testimony did not have a prejudicial effect, especially given the criminal record of Mr. Jackson which he acknowledged during his trial testimony.
The first assignment of error is overruled.
Both assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS and PETREE, JJ., concur.